UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 30, 2019

SEAN F. McAVOY, CLERK

| | |
|---|---|
| RICHARD V., | No. 2:17-CV-0436-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney Gary R. Penar represents Richard V. (Plaintiff); Special Assistant United States Attorney David J. Burdett represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability since July 3, 2014, due to a back injury, right shoulder impairment, and acid reflux. Tr. 214, 219, 260. Plaintiff's applications

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Jesse K. Shumway held a hearing on March 21, 2017, Tr. 36-76, and issued an unfavorable decision on May 3, 2017, Tr. 15-26. The Appeals Council denied review on October 27, 2017. Tr. 1-6. The ALJ's May 2017 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on December 26, 2017. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on June 5, 1964, and was 50 years old on the alleged onset date, July 3, 2014. Tr. 214, 219. He finished high school and completed one year of college. Tr. 261, 368.

Plaintiff's disability report indicates he stopped working on July 3, 2014 because of his conditions. Tr. 260. Plaintiff testified at the March 2017 administrative hearing that he is no longer able to perform the heavy lifting, movements, and walking/standing of his prior work. Tr. 52. He indicated lower back pain prevented him from bending and twisting, Tr. 53-55, he was not able to sit in a hard chair for a long period of time, and he could only walk or stand for about 25 minutes before his back would spasm, Tr. 55. Plaintiff stated "[t]he less I'm on my feet, the less it hurts." Tr. 57. He believed he could only be on his feet for an hour to an hour and a half during an eight hour period. Tr. 56.

Plaintiff testified he spends a typical day sitting, watching TV, playing video games, and reading, Tr. 56-57, and he spends the majority of the day with his legs elevated while sitting. Tr. 57. He indicated his hobbies of shooting pool, fishing, and going on hikes were limited by his impairments. Tr. 59-60. However, Plaintiff also stated his pain medication (Hydrocodone) "helps really well." Tr. 58.

He testified the medication allowed him to perform activities with minimal or little pain. Tr. 58.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of

entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs which claimant can perform exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 3, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 3, 2014. Tr. 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity, lumbar degenerative disc disease, and bilateral carpal tunnel syndrome. Tr. 17.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light exertion level work but with the following limitations: he can never climb ladders, ropes, or scaffolds; he can frequently climb ramps and stairs and balance; he can only occasionally stoop, kneel, crouch, and crawl; he can perform frequent handling; he can have no concentrated exposure to vibration; and he can have no exposure to hazards such as unprotected heights and moving mechanical parts. Tr. 19.

At step four, the ALJ found Plaintiff was not able to perform his past relevant work. Tr. 24.

At step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of marker, meter reader, parking lot attendant, and storage clerk. Tr. 24-25. The ALJ additionally determined that if Plaintiff was further restricted to needing a sit-stand option at will, frequent fingering in addition to frequent handling, and lifting and carrying no more than 10 pounds, he would still be able to perform other jobs present in significant numbers in the national economy, including the jobs of grain picker, courtesy booth cashier, and parking lot attendant. Tr. 25. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 3, 2014, the alleged onset date, through the date of the ALJ's decision, May 3, 2017. Tr. 25-26.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff's brief, however, fails to specifically delineate the issues he requests the Court to address. ECF No. 13.

After examining Plaintiff's motion, the Court construes Plaintiff's argument as the ALJ erred in this case by (1) improperly weighing the medical opinions of treating physician Vivian Moise, M.D., examining physician Kevin Weeks, D.O., state agency reviewing physician Norman Staley, M.D., and medical expert H.C. Alexander, III, M.D.; and (2) finding Plaintiff capable of performing other work existing in significant numbers in the national economy at step five of the sequential evaluation process. ECF No. 13 at 7-19.

///

# DISCUSSION[1]

## A. Medical Source Opinions

Plaintiff's brief asserts the ALJ erred by failing to properly assess multiple medical source opinions of record. ECF No. 13 at 7-19. Plaintiff specifically argues the ALJ erred by giving great weight to the opinions of treating physician Moise, but ignoring limitations she identified which are contrary to the ALJ's RFC finding, ECF No. 13 at 9, by failing to incorporate any limitations in reaching or pushing/pulling with the upper extremities in the RFC finding despite the shoulder impairment and limitations identified by Drs. Staley and Weeks, ECF No. 13 at 17-18, and by assigning great weight to the unsupported opinions of medical expert, Dr. Alexander, ECF No. 13 at 18-19.

In this case, the ALJ found that although Plaintiff had severe physical impairments (obesity, lumbar degenerative disc disease, and bilateral carpal tunnel syndrome), the medical evidence did not support the degree of limitation alleged by Plaintiff. Instead, the ALJ determined Plaintiff retained the residual functional capacity to perform a restricted range of light exertion level work. Tr. 19. The Court finds the ALJ's interpretation of the medical evidence of record is supported by substantial evidence. *See infra*.

///
///

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

### 1. Vivian Moise, M.D.

Plaintiff first contends the ALJ erred by according "great weight" to the opinions of Dr. Moise, but not including all of the limitations she assessed in a March 24, 2017 Physical Medical Source Statement, Tr. 449-452, in the ALJ's ultimate RFC determination. ECF No. 13 at 9.

Dr. Moise's treatment notes from 2015 to 2017, Tr. 416-448, indicate the opinion that Plaintiff's low back was at maximum medical improvement, with long term restriction to sedentary to light work and limited bending, lifting and carrying. Tr. 416. It was noted MRIs revealed stable findings at L5-S1 of bilateral moderate foramenal stenosis, right L4-5 disc protrusion possibly affecting the right L4 root, and a stable left sided protrusion at L3-4, none requiring surgical intervention. Tr. 416, 419, 423, 427, 429, 433, 435, 439 (MRI "does not show severe enough nerve impingement to refer for surgery"). Dr. Moise opined that Plaintiff could not return to his heavy labor type jobs, but he would be able to perform light to sedentary work with minimal bending, lifting and carrying. Tr. 421.

On March 24, 2017, Dr. Moise completed a Physical Medical Source Statement form. Tr. 449-452. Dr. Moise stated that Plaintiff could sit 30 minutes at one time, stand 30 minutes at one time, and sit about four hours and stand/walk about two hours in an eight-hour working day. Tr. 450. She indicated Plaintiff would need a job that permitted him to shift positions at will from sitting, standing, or walking, but that Plaintiff would not need to take unscheduled breaks during a working day. Tr. 450. Dr. Moise opined that Plaintiff could occasionally lift and carry up to 10 pounds and rarely lift and carry up to 20 pounds; could rarely twist, stoop, crouch/squat, or climb stairs; could never climb ladders; and would have no significant limitations with reaching, handling, or fingering. Tr. 451. Dr. Moise found that Plaintiff would be off task 0% of the workday because of his symptoms, would be capable of low stress work, and would likely be absent only one day a month as a result of his impairments or treatment. Tr. 452.

The ALJ gave great weight to Dr. Moise's opinions. Tr. 23. The ALJ indicated the limitations assessed by Dr. Moise were consistent with the record, Tr. 23, and accounted for Dr. Moise's limitations by restricting Plaintiff to the performance of light work with certain postural restrictions, Tr. 19.

Plaintiff argues the ALJ erred by omitting from the ALJ's RFC determination, without comment, Dr. Moise's Physical Medical Source Statement form limitations of standing/walking up to two hours, the requirement of a sit/stand option, and the impact of mental impairments on Plaintiff's functioning. ECF No. 13 at 13. However, the ALJ is not required to adopt in full the opinion of any particular medical source. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988))). An ALJ may properly rely upon only selected portions of a medical opinion while ignoring other parts, but such reliance must be consistent with the medical record as a whole. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

With respect to the impact of Plaintiff's mental impairments, Plaintiff did not allege disabling mental limitations on his disability report, Tr. 260, Plaintiff testified at the administrative hearing that mental health issues have never affected him, Tr. 52, and Plaintiff has otherwise failed to assert that mental impairments caused any specific disabling functional limitations. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (finding "the mere existence of an impairment is insufficient proof of a disability"). The ALJ correctly determined that Plaintiff's mental impairments did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities, Tr. 18, and did not err by failing to include mental health restrictions in the RFC determination.

With regard to Plaintiff's physical capabilities, the Physical Medical Source Statement form of Dr. Moise indicated Plaintiff could occasionally lift and carry up

to 10 pounds and rarely lift and carry up to 20 pounds, could stand/walk only about two hours in an eight-hour working day, and would need a job that permitted him to shift positions at will from sitting, standing, or walking. Tr. 450-451. Dr. Moise's treatment notes from 2015 to 2017 consistently limited Plaintiff to the performance of light to sedentary work with minimal bending, lifting and carrying, Tr. 416-448, and only stated that Plaintiff could not return to his heavy labor type jobs, Tr. 421. It does not appear Dr. Moise's opinions conflict with the ALJ's RFC determination.

In any event, at the administrative hearing, the ALJ directed the vocational expert to explain how the forgoing particular physical restrictions would affect the occupations identified by the vocational expert. Tr. 71-75. The vocational expert specifically indicated that if the individual could lift/carry no more than 10 pounds, would need the option to sit and stand at will, was limited to frequent fingering in addition to frequent handling, and had to stay off his feet for six hours a day, the individual would still be able to perform the jobs of parking lot attendant, grain picker, and courtesy booth cashier. Tr. 71, 74-75. Any error for not expressly including these specific restrictions in the ultimate RFC determination is therefore harmless. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result). An ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

**2.     Kevin Weeks, D.O.**

Plaintiff next contends the ALJ erred by failing to provide specific and legitimate reasons for rejecting the July 2015 examination findings of Dr. Weeks. ECF No. 13 at 16.

Dr. Weeks examined Plaintiff on July 25, 2015. Tr. 366-372. It was noted that Plaintiff could use his hands for buttons and zippers, shoe laces, cleaning

teeth, caring for hair, turning doorknobs, typing and signing his name. Tr. 368. He was also able to pick up a coin without difficulty. Tr. 370. The range of motion in his shoulders were within normal limits, he had 5/5 strength in the bilateral upper and lower extremities, and his hand grip was strong bilaterally. Tr. 370. The range of motion in Plaintiff's back was noted as somewhat restricted. Tr. 370.

Dr. Weeks opined that Plaintiff could walk/stand about four hours and sit about six hours in an eight-hour workday and could lift and carry 10 pounds both occasionally and frequently. Tr. 371. Dr. Weeks further found postural and environmental limitations and "some restriction in reaching overhead and reaching forward but handling, fingering and feeling no obvious limitations." Tr. 371.

The ALJ accorded "partial" weight to Dr. Week's report, finding it was inconsistent with imaging of the shoulder and a lack of treatment for that issue and inconsistent with the overall normal findings throughout the record. Tr. 22.

Plaintiff contends the ALJ erred by relying on outdated x-rays (2012 shoulder imaging study) to reject the shoulder limitations identified by Dr. Weeks. ECF No. 13 at 16. The undersigned does not agree.

Although of limited relevance, evidence from outside of the relevant time period can be deemed useful as background information. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). Plaintiff's rotator cuff injury occurred in 2007. Tr. 367. As noted by the ALJ, by April 2012 there was no significant findings on right shoulder x-rays, Tr. 322, and, from that date, there is very little clinical evidence related to Plaintiff's shoulder issue. Tr. 18.

In July 2015, Plaintiff reported to Dr. Weeks he could lift no more than 20 pounds, Tr. 367, on examination in September 2015 he had normal movement of all extremities and normal motor strength and tone, Tr. 399, and although two months later Plaintiff reported pain in his left shoulder, there was no crepitation, Tr. 397, and Plaintiff did not continue to report this issue to his care providers. On March 24, 2017, Dr. Moise opined that Plaintiff could occasionally lift and carry

up to 10 pounds, rarely lift and carry up to 20 pounds, and would have no significant limitations with reaching, handling or fingering. Tr. 451.

Here, the ALJ properly evaluated the evidence of record pertaining to Plaintiff's shoulder. The 2012 imaging report was relevant to demonstrate there was no abnormality with regard to Plaintiff's shoulder following the injury of that joint in 2007, and the overall record does not reflect limitations as a result of Plaintiff's 2007 shoulder injury. Accordingly, the ALJ did not err by accordingly only "partial weight" to the examination report of Dr. Weeks.

### 3. Norman Staley, M.D.

It appears Plaintiff next asserts the ALJ erred by assigning "great weight" to the opinion of reviewing physician Staley, Tr. 23, but failing to incorporate any limitations in reaching or pushing/pulling with Plaintiff's upper extremities in the RFC determination. ECF No. 13 at 17-18.

Dr. Staley reviewed the record on November 16, 2015, and opined Plaintiff was capable of light work with limited reaching and pushing/pulling abilities as well as postural and environmental limitations. Tr. 108-113. He specifically found Plaintiff was limited in pushing and/or pulling with his right upper extremity and limited to occasional overhead lifting with his right upper extremity. Tr. 109-110. The ALJ gave great weight to Dr. Staley's opinion, except with respect to the restrictions attributed to Plaintiff's shoulder pathology. Tr. 23. The ALJ indicated that the light lifting limitation accommodated any limitations from Plaintiff's shoulder. *Id.*

As stated above with respect to Dr. Weeks, April 2012 x-rays of Plaintiff's right shoulder revealed no significant findings, Tr. 322, and, following that date, there is very little clinical evidence related to Plaintiff's shoulder issue. *See supra.* The weight of the evidence of record does not reflect limitations as a result of Plaintiff's 2007 shoulder injury. Consequently, the ALJ did not err by discounting Dr. Staley's assessed reaching and pushing/pulling restrictions.

### 4. H.C. Alexander, III, M.D.

Plaintiff also contends the ALJ erred by according great weight to the opinion of medical expert Alexander. ECF No. 13 at 18-19. Plaintiff asserts Dr. Alexander's opinion is unsupported by substantial evidence. ECF No. 13 at 18.

Dr. Alexander testified at the administrative hearing held on March 21, 2017, Tr. 41-49, and identified Plaintiff's issues as degenerative disc disease of the lower lumbar spine (no greater than mild canal stenosis at any level), rotator cuff tear, and carpal tunnel syndrome, Tr. 41. Dr. Alexander indicated imaging did not show any abnormality with respect to Plaintiff's shoulder (x-ray was negative), Tr. 42, there was no significant evidence of nerve root compression with regard to Plaintiff's lower back, Tr. 43, and nerve conduction studies showed only mild carpal tunnel syndrome, Tr. 43-44. He opined Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently and could stand/walk for six hours, with normal breaks, in an eight-hour workday with no limitation on sitting. Tr. 43. He additionally assessed postural, environmental and manipulative limitations (related to the carpal tunnel syndrome). Tr. 43-44.

The ALJ gave "great weight" to the medical expert's testimony because he reviewed the entire longitudinal medical record, gave a reasonable explanation of his opinion, and had program knowledge. Tr. 24.

There is no requirement that the ALJ provide rationale for according weight to a medical professional, rather this Court reviews whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Dr. Alexander indicated he reviewed all exhibits of record, Tr. 41, and properly cited the medical evidence that supported the basis for his conclusions regarding Plaintiff's medical condition, Tr. 41-49.

Plaintiff's argues it appears Dr. Alexander did not read the MRI reports because Dr. Alexander's finding of "no evidence of nerve compression" was inconsistent with the medical evidence. ECF No. 13 at 18. First, Dr. Alexander

stated Dr. Moise did not feel there was "significant evidence for nerve root compression," Tr. 43, not that there was "no evidence" of nerve compression. This testimony is corroborated by Dr. Moise's most recent records, Tr. 416-448, supported by updated imaging, which shows stable findings at L5-S1 of bilateral moderate foramenal stenosis, right L4-5 disc protrusion possibly affecting the right L4 root, and a stable left sided protrusion at L3-4, none requiring surgery. Tr. 416, 419, 423, 427, 429, 433, 435, 439 (MRI "does not show severe enough nerve impingement to refer for surgery"). In fact, Dr. Moise's most recent record, the March 24, 2017 Physical Medical Source Statement, makes no mention of evidence of nerve compression. Tr. 449-452.

Plaintiff also asserts Dr. Alexander erred by failing to take into consideration Plaintiff's level of pain. ECF No. 13 at 18-19. Dr. Alexander did not examine or treat Plaintiff. He merely reviewed the objective medical evidence and expressed his opinion of Plaintiff's functioning based on the record.

It was proper for the ALJ to consider Dr. Alexander's opinion, based on his review of the record as a whole, and assign the opinion great weight. The Court finds Plaintiff's argument with respect to Dr. Alexander is without merit.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at 604.

Based on the foregoing, the Court finds the ALJ did not err by failing to find greater limitations than as conveyed in the RFC determination. The limitations assessed by the ALJ are supported by the weight of the record evidence and free of error.

///

**B. Step Five**

Plaintiff's brief lastly contends the ALJ erred at step five of the sequential evaluation process by finding Plaintiff capable of performing other work existing in significant numbers in the national economy. ECF No. 13 at 19. Plaintiff asserts the RFC determination, and thus the hypothetical presented to the vocational expert, erroneously omitted Plaintiff's limited "abilities to sit, stand/walk, lift and reach, as well as mental limitations." ECF No. 13 at 19.

As determined above, the ALJ did not err in the weight he accorded to the above noted medical professionals. As such, the Court finds the ALJ's determination with respect to Plaintiff's functioning capacity is supported by substantial evidence. Presented with a hypothetical that mirrored the ALJ's supported RFC determination, the vocational expert testified that the individual would be able to perform a significant number of jobs existing in the national economy, including the jobs of marker, meter reader, parking lot attendant and storage clerk.[2] Tr. 69-70. Since the vocational expert's testimony was based on a proper RFC determination by the ALJ, the Court finds the ALJ did not err at step five of the sequential evaluation process. *See Rollins v. Massanari*, 261 F.3d 853,

---

[2]In a second hypothetical, the vocational expert testified that if the individual was further restricted to lifting/carrying no more than 10 pounds, needing an option to sit and stand at will, frequent fingering in addition to frequent handling, and staying off his feet for six hours a day, the individual would still be capable of performing the jobs of parking lot attendant, grain picker, and courtesy booth cashier. Tr. 70-71, 74-75. The ALJ made an alternative step five finding that Plaintiff could also perform these jobs, which existed in significant numbers in the national economy, if he were deemed limited to a greater extent as noted in the second hypothetical. Tr. 25.

857 (9th Cir. 2001) (the ALJ did not err by omitting limitations in a hypothetical to the vocational expert that a claimant claimed, but failed to prove).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED January 30, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE